IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ADAM MIRELEZ, § | |
| TDCJ No. 02413581, § | |
|     Plaintiff, § | |
| § | |
| v. § | A-23-CV-1117-RP |
| § | |
| LLANO COUNTY, TX, et. al., § | |
|     Defendants. § | |

**ORDER**

Before the Court are Plaintiff Adam Mirelez's 42 U.S.C. § 1983 complaint (ECF No. 1), Defendants Caleb Garza and Rickey Colley's Amended Motion for Summary Judgment (ECF No. 28), and Plaintiff's Motion to Amend Complaint (ECF No. 32). Plaintiff is proceeding pro se and in forma pauperis. Upon review of the parties' arguments and pleadings, the Court denies Plaintiff's motion to amend his complaint, grants Defendants' Garza and Colley's motion for summary judgment, and dismisses Plaintiff's claims against Defendants Williamson County Sheriff's Department, Llano County Sheriff's Department, and Llano County pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I. Procedural History**

Plaintiff is currently incarcerated in the Michael Unit of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). In Plaintiff's § 1983 complaint, he names the following defendants: Llano County, Llano County Sheriff's Department, Williamson County Sheriff's Department, Williamson County Sheriff's Deputy Caleb Garza, and Williamson County Sheriff's Lieutenant Rickey Colley.[1] Plaintiff alleges that, on September 9, 2021, he was

---

[1] Plaintiff originally identified Defendants Garza and Colley as "John Doe 1 and John Doe 2" in his complaint. After the Williamson County Sheriff identified Defendants Garza and Colley as John Does 1 and 2, their names were substituted. (ECF Nos. 14, 16.)

1

surrendering peacefully and complying with orders when Garza and Colley assaulted him by firing a bean-bag gun at him, resulting in a broken femur that required surgery. Plaintiff alleges that Garza and Colley's assault on him was premediated. He further claims that Llano County failed to provide safe conditions in its jurisdictional boundaries; the Llano County Sheriff's Department employed a force outside its chain of command that it could not control and resulted in Plaintiff's assault; and that the Williamson County Sheriff's Department failed to maintain control of the officers who assaulted him. (ECF No. 1.)

The Court ordered service on Defendants Garza and Colley.[2] (ECF No. 16.) After answering Plaintiff's complaint, Defendants moved for summary judgment, arguing they were entitled to qualified immunity because Plaintiff could not show they violated his constitutional rights under the Fourth Amendment, and alternatively, there was no clearly established law showing their actions violated the Constitution. (ECF No. 28.) On April 26, 2024, the Court ordered Plaintiff to respond to Defendants' motion for summary judgment by May 28, 2024, and provided Plaintiff with a short explanation of the standard for summary judgment. (ECF No. 31.) On May 31, 2024, Plaintiff moved for an extension of time to respond to the motion, and then, three weeks later, he filed a motion to amend his complaint, wherein he names only Colley, Garza and Williamson County as a defendants, and alleges they violated his Fourteenth Amendment rights by not giving him equal protection of the law. (ECF No. 32.)

---

[2] The Court did not serve the Llano and Williamson County Sheriff's Departments because they are not entities capable of being sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). The Court also did not order service on Llano County because Plaintiff's allegations against it—that it failed to provide safe conditions in its jurisdictional boundaries—do not state a claim for relief: Plaintiff does not identify a Llano County policy, a policy maker, or how either of these were the moving force behind the alleged violation of his constitutional rights. *See Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) ("municipal liability under Section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.") *(citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)).

On June 25, 2024, the Court granted Plaintiff an extension until July 8, 2024, to file a response to Defendants' summary judgment motion. To date, Plaintiff has not responded.

## II. Discussion and Analysis

1. Motion to Amend

Plaintiff moves to amend his complaint, adding Williamson County as a defendant, and alleging Garza, Colley, and Williamson County violated his Fourteenth Amendment rights. (ECF No. 32.) Federal Rule of Civil Procedure 15(a) states that the Court should "freely give leave [to amend] when justice so requires." The party requesting leave to amend "need only 'set forth with particularity the grounds for the amendment and the relief sought.'" *U.S. ex. rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (quoting *United States, ex. rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386-87 (5th Cir. 2003)). The Supreme Court has enumerated "five considerations in determining whether to deny leave to amend a complaint: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent such factors, the leave sought should, as the rules require, be freely given." *Id*. (internal quotation marks omitted).

Plaintiff's motion to amend is denied based on futility. As a municipality, Williamson County can only be held liable under § 1983 only if Plaintiff identifies "a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is [that] policy or custom ..." *See Piotrowski,* 237 F.3d at 578. Plaintiff's amended complaint does not identify any of these elements, and therefore fails to state a claim for relief against Williamson County. This is the only

substantive difference between Plaintiff's original and amended complaints. Accordingly, Plaintiff's motion to amend is denied as futile. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (a district court need not grant a futile motion to amend; an amended complaint is considered futile if it would fail to state a claim upon which relief could be granted) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).

2. Defendants' Motion for Summary Judgment

   *a. Summary Judgment & Qualified Immunity Legal Standards*

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56; *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general

4

allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in their favor. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2023)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. "An officer merits qualified immunity unless (1) he 'violated a statutory or constitutional right of the plaintiff' and (2) 'the right was clearly established at the time of the violation.'" *Wilson v. City of Bastrop*, 26 F.4th 709, 712 (5th Cir. 2022) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).When considering a qualified immunity defense, the Court still views the evidence in the light most favorable to the non-movant and draws all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

*b. Summary Judgment Evidence*

The undisputed summary judgment evidence shows the following. On August 6, 2021, the Llano County Sheriff's Office (LCSO) obtained a warrant for Plaintiff's arrest for aggravated assault with a deadly weapon. Office Bryan Scoggins reported Plaintiff had approached the complainant's car with a gun in his hand and threatened to shoot and kill the complainant. The driver said that Plaintiff hit the car's window with his gun, after which she drove away and called 911. (ECF No. 28-1 at 4-6.)

On September 9, 2021, the LCSO attempted to arrest Plaintiff based on this warrant and an outstanding parole violation. However, the homeowner at Plaintiff's residence alerted the deputies that Plaintiff was hiding in a bedroom, had two handguns, and had said he was not going back to prison. The deputies attempted to talk Plaintiff out of the house using a patrol unit's PA system but were unsuccessful. At that point, they contacted the Williamson County Sheriff's Office (WCSO) SWAT team for assistance. (ECF No. 28-1 at 9.)

Defendant Colley attested that, on September 9, 2021, he was notified that Llano County had requested assistance from the WCSO SWAT team in executing a high-risk arrest warrant. Colley was notified that Plaintiff was wanted on warrants for a parole violation and aggravated assault with a deadly weapon, and that he was barricaded in a trailer on his property with access to two handguns. The WCSO SWAT team, consisting of 17 members, travelled to Plaintiff's residence. On the way to the residence, Colley briefed the team on the plan: first, they would conduct a surround and callout to take Plaintiff into custody; if unsuccessful, they would create a communications portal and give commands to gain compliance; if unsuccessful, they would deploy CS gas into the residence to get Plaintiff to remove himself; if unsuccessful, they would make a limited penetration into the residence, while continuing to announce and callout; and, if that was

unsuccessful, the SWAT team would move through the residence to locate and detain Plaintiff. (*Id.* at 50-51.)

As part of the SWAT team's standard operating procedure, Colley assigned himself the role of verbal communications with the Plaintiff and assigned Defendant Garza as the less lethal operator. The desired effect of less lethal weapons is to cause sufficient discomfort to subdue a resistant or aggressive subject without causing fatal injuries. Colley determined Garza would use Safariland Drag Stabilized Bean Bag munitions, which are deployed using an orange-colored 12-gauge shotgun. Colley attested the recommended operational range for this weapon is between 20 and 75 feet, and that officers should target the large muscles below the waist when using the weapon. Colley further stated he had personally trained Garza on how to properly use this weapon. (*Id.* at 52.)

The SWAT team arrived at Plaintiff's residence at 5 p.m. on September 9, 2021. The LSCO confirmed with Colley Plaintiff's location, that he had two handguns, and that he had said he was not going back to prison. Colley then made contact with WCSO deputies Phillip Anelli and David Oberg, who were there as part of WCSO's crisis negotiation team. They decided that Oberg and Anelli would attempt to reach Plaintiff by cell phone and talk him out of the trailer voluntarily. If unsuccessful, the SWAT team would proceed to the introduction of CS gas. (*Id.*)

Defendants provided Anelli's bodycam video of his and Oberg's negotiations with Plaintiff. (*Id.* at 44.) Oberg reported he made the first phone call to Plaintiff around 5:30 p.m., and that between 5:30 p.m. and 6:30 p.m. he called Plaintiff eleven times. (*Id*. at 15.) Anelli described the initial phone call as productive, noting Plaintiff said he was alone, unarmed, and uninjured. He also noted Plaintiff said several times that he wanted to surrender peacefully and not get hurt, but

7

that he also did not want to return to prison. On Plaintiff's last phone call with Oberg, he agreed to surrender. (*Id.* at 17.) The bodycam audio is consistent with Oberg and Anelli's reports.

In his affidavit, Colley described what happened after Plaintiff agreed to surrender:

> When the door opened and [Plaintiff] stepped out, I saw that he had his hands up and they appeared to be empty. I did not see firearm in his front waistband, but he was wearing baggy shorts with pockets, and I could not tell whether he had a firearm hidden in his pants. I immediately called "Adam come out to us, walk this way, walk right towards us." I continued to tell [Plaintiff] to walk in my direction.
>
> Although [Plaintiff] initially complied, he then began to veer off course and walk towards a trampoline in the yard. I repeated my instruction to walk towards me, intensifying the volume and tone of my voice as he continued to refuse my instructions and move instead to the trampoline. I became immediately concerned that [Plaintiff] might have a weapon or other booby trap on or near the trampoline. As [Plaintiff] turned to the trampoline, I warned him "Adam, you are going to get impacted," and then instructed again for him to walk towards me. [Plaintiff] did not comply, and instead began lowering his hands to the trampoline, which also put his hands in close proximity to his pockets. As he was resisting my directions, and concerned that he might be either reaching for a weapon or preparing to turn and run, I called out for Deputy Garza to impact him with a less lethal bean bag round. At that time, I did not believe that any other lesser force alternative was safely available to close the distance to [Plaintiff] and gain compliance. Garza had stepped out to the side, and I could see that he was more than 20 feet away from where [Plaintiff] was standing at the trampoline. Garza impacted [Plaintiff] once in the right quadricep, but [Plaintiff] did not go down or move to walk towards me, so I called for a second impact. Garza again impacted [Plaintiff] in the right quadricep, this time resulting in [Plaintiff] going to the ground so that the arrest team could move in and restrain his hands with flex cuffs and clear him for any weapons. [Plaintiff] was then safely placed under arrest.

(*Id.* at 53-54.) After being restrained, Plaintiff was examined by the SWAT team's Emergency Medical Technician; the examination revealed two impact bruises but no skin penetration or other injuries. Colley attested that, in his experience, the bruises were consistent with an appropriately deployed bean bag round. The SWAT team cleared the trailer and LCSO officers located two handguns in it. Colley attested he measured the distance between where Garza was standing when he deployed the bean bag rounds and where Plaintiff was. It was 27 feet. (*Id.* at 54.)

8

Defendants provided WCSO Deputy T. Randig's bodycam video from the incident. (*Id.* at 45.) The video shows the SWAT team preparing to use gas to make Plaintiff leave his trailer. At minute 14:35 and 14:58, Deputy Randig says, "Our plan is to gas until he comes out . . . we give him every opportunity to comply before we gas." At minute 30:11, another officer—presumably Colley but it is not clear from the video—tells Defendant Garza, "Caleb, if [Plaintiff] does anything other than what we tell him to do, tear them legs up." After Garza asks about the minimum distance, the same person tells him that it is 10 feet, which is half the minimum distance of 20 feet, according to Colley's affidavit and attachments.

The video generally supports Defendants recounting of the force used to effect Plaintiff's arrest. At minute 37:30, Plaintiff begins exiting his residence. As he is walking by the trampoline, he pauses with his hands in the air, and then makes a 90 degree turn toward the trampoline. He then lowers his hands down to hold onto the trampoline. At the same time, Colley yells at Plaintiff "Walk towards me. Walk towards me, Adam! Adam, you're gonna get impacted! Walk towards me! Impact! Impact!" Garza shoots Plaintiff twice in the leg using the bean bag shotgun; Plaintiff then falls to the ground where he is surrounded by officers and placed in handcuffs. A SWAT team member then calls for EMS to attend to Plaintiff. After he hobbles over to a SWAT truck, someone cuts his right pant leg, exposing his leg where there is an impact mark on the outside of his lower right quadricep and his right knee.

Defendant Garza submitted an affidavit that is consistent with Colley's affidavit and with Deputy Randig's bodycam video. He attests "I have been trained to observe a distance of 20 feet for purposes of deploying a Drag Stabilized Bean Bag round. Based on my training, and the location of the bean bags and ejected shells, I was more than 20 feet from Mirelez at the time I deployed both bean bag rounds." (*Id.* at 48.)

9

*c. Fourth Amendment Excessive Force Claim*

Plaintiff claims Defendants' actions violated his Fourth Amendment rights when they used excessive force to arrest him, i.e. by shooting him with the bean bag rounds and breaking his femur bone. Defendants argue their use of force was reasonable based on the circumstances and they are therefore entitled to qualified immunity.

To prove an excessive-force claim, Plaintiff must show that "in addition to being seized, he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. City of Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009) (citation and quotation marks omitted). To establish the first element, Plaintiff must show his injury was more than de minimis. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). Defendants do not dispute that Plaintiff's injury—a broken femur bone—was more than de minimis. Accordingly, the question is whether the less-lethal shots that broke Plaintiff's femur bone were excessive to the need and objectively unreasonable.

Whether a use of force is unconstitutionally excessive depends on the context in which the force was used. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). In reviewing an excessive-force claim, a court should consider "the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. at 728-29 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "[O]fficers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citation and internal

10

quotation marks omitted). "[T]he speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need." *Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017) (citing *Deville*, 567 F.3d at 167).

Here, the summary judgment evidence shows that the Llano County Sheriff's Office attempted to execute two arrest warrants for Plaintiff: one based on a parole violation, and one based on a charge for aggravated assault with a deadly weapon. However, Plaintiff would not voluntarily surrender, and the owner of the property told Llano County officers that Plaintiff had two handguns in his possession and had said he was not going back to prison. When the WCSO SWAT team arrived on the scene, Officers Oberg and Anelli spent close to an hour negotiating with Plaintiff to surrender peacefully. During this time, the SWAT team discussed their strategy for Plaintiff's to surrender, which was solely focused on deploying CS gas into Plaintiff's residence, thereby forcing him to leave.

After Oberg and Anelli convinced Plaintiff to surrender peacefully and he was exiting his residence, Defendant Colley directed him to keep walking towards the SWAT team. Plaintiff complied with Colley's directions until he neared the trampoline, at which point he turned to face the trampoline, and then lowered his hands to rest on it. Meanwhile, Colley urged Plaintiff to walk toward him and warned Plaintiff he would be impacted. As Colley attested, the SWAT team worried that Plaintiff had weapons hidden on the property, including near or on the trampoline. At that point, Colley directed Garza to impact Plaintiff, and Garza shot him in the lower quadricep and knee, causing Plaintiff to fall to the ground and surrender. After handcuffing Plaintiff, the SWAT team immediately called for EMS help.

The Fifth Circuit has emphasized that determining "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle*

11

*v. Bexar Cnty.*, 560 F.3d 404, 411 (5th Cir. 2009). "When facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably," a court "can hold that an officer acted reasonably as a matter of law." *Id.* at 412. However, "when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences," a court "must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff." *Id*.

Here, the facts are undisputed: Plaintiff never responded to Defendants' summary judgment motion, despite the Court ordering him to do so. Further, the totality of the circumstances weighs in favor of finding that Defendants did not violate Plaintiff's constitutional right to be free from excessive force: (1) the crime Plaintiff was being arrested for—aggravated assault with a deadly weapon—is a second degree felony[3] which carries a punishment range of 2-10 years and is therefore a serious crime; (2) at the time of the arrest, Plaintiff was in the possession of two handguns, therefore posing a threat to himself and others; and (3) he actively resisted arrest for several hours by refusing to leave his home, requiring the LSCO to request the assistance of the WCSO SWAT team and their crisis negotiation team. Although Randig's bodycam video captures Defendant Colley misinforming Defendant Garza that the minimum distance for the bean bag gun is 10 feet, Colley attests that he measured the shooting distance at 27 feet, well within the weapon's range of 20-75 feet. Plaintiff does not dispute any of these facts. Accordingly, the Court concludes Defendants Colley and Garza acted reasonably as a matter of law and are therefore entitled to qualified immunity.

It is therefore **ORDERED** that Plaintiff's Motion to Amend Complaint (ECF No. 32) is **DENIED**;

---

[3] TEX. PENAL CODE ann. § 22.02(b) (West 2023).

It is further **ORDERED** that Plaintiff's claims against Defendants Llano County Sheriff's Department and Williamson County Sheriff's Department are **DISMISSED WITHOUT PREJUDICE** as these entities are not capable of being sued;

It is further **ORDERED** that Plaintiff's claim against Defendant Llano County is **DISMISSED WITH PREJUDICE** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B); and

It is finally **ORDERED** that Defendant Colley and Garza's Motion for Summary Judgment (ECF No. 28) is **GRANTED**.

SIGNED this 23rd day of September, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE